and start with the first case on our calendar scheduled for argument. That's United States Equal Employment, it's at all versus local we'll say 25 of the sheet metal workers. Smith? Yes, Your Honor. Okay, whenever you're ready. Good morning, Your Honors. May it Smith for the EEOC. The court has asked about appellate jurisdictions so if it's all right I'd like to start there. The court has jurisdiction under both 1291 and 1292. Basically this case has two parts. One is, I'm sorry did you have a question? No, no. This case has two parts. There's the request to set aside the original 1978 consent decree as well as all the following decrees and the request to enter the new proposed consent decree that the parties agreed on. And so as to the original decree and the previous orders, we've showed significantly changed circumstances under Rule 60b-5 and denials of Rule 60b-5 motions are reviewable as final orders under 1291. Did you did you argue that below? Yes, Your Honor. It was argued both in the in the first motion to enter the new consent decree and in the renewed motion in 2024. You argued it as a 60b-5? Yes, Your Honor. It wasn't captioned that way but it was in, if you'd like to look at the record, it's at R431 at 18 to 20 and then at R507 at 15 to 16. We argued that the party said judge significantly changed circumstances under the Horn case. So the parties put significant effort into arguing that below because it wasn't entirely clear whether this should be treated as just a new consent decree or a question of whether we were asking for a modification. And so we briefed both, just as we've done on appeal. So the court has jurisdiction under 1291 for that aspect of the case. For the aspect of the case that is entering the new proposed consent decree, that's 1292-A1 and we've analyzed that under Citigroup. The court has jurisdiction because this is effectively a request to enter an injunction that's been denied and we've shown significant harm that will arise from the absence of a median appeal. The question is whether there is enough harm because in one case we said there wasn't, in another one we said there was. So was there enough, is there enough harm here? Yes, Your Honor. If you're talking about the Grant case, the local 638 case from 2004, that was a very different situation because in that case it was only resolving a portion of a contempt dispute that the parties had and all the other orders previously were going to remain in place. And so the court referred to the relief the parties asked for as ancillary and conditional and in addition the parties could go and renegotiate that settlement agreement and there was essentially no end to the case in sight at that point anyway. In this case, the parties would be required to continue under the special master regime that's been going on for 55 years and... So you say it's more like Citigroup? Exactly, Your Honor. And instead of going to trial, the parties would be required to try to eliminate all race-based disparities in the ironworking industry in the local area, which is neither what the consent decree requires nor something that it's clear that the Union would have any ability to do. And so that's really what's at the heart of this case, is the fact that the court below really didn't consider that the Union, according to all of the studies that we've been able to do, all of the evidence we've been able to gather and our statistical analysis, has stopped discriminating in referral. Well, the court essentially said you only gave them data for 2018-19 as to some key issues. Now, as to some issues you've given others, but as to the key data on the amount of actually... You only gave it for one year, despite repeated requests to do more. And so the question for us is, isn't that enough for a district court to say, sorry, you got to give that data because without that data, the court isn't comfortable in making the change. And I know they then use language of inadequacy and so it may or may not be, but isn't that the core of the issue? That is the core issue, Your Honor, but the problem is that we did give more than sufficient data for the court to see that the unit has stopped discriminating in referrals, and that's because of the fund office data, and I can explain why that is. But why, in terms of deference, shouldn't we give deference to the court's statement that doesn't get enough data? Now, I know we're supposed to give you data on the public interest, even assuming Chevron, whatever, and that, but on the question of what was the fact, were the facts before the court, don't we give deference to the district court? The district court is owed deference, Your Honor, but its error was very significant here in the way that it looked at the data. And the problem is that the district court... It's not a significant error to not comply with record-keeping requirements for years? That's not significant? It absolutely is, Your Honor, but that has to do with past non-compliance and not whether the unions are currently in compliance with the law. And what the court made clear in Horn is that failure to comply with procedural aspects, and even very important procedural aspects of prior orders, is not enough to deny a 60B-5 request. And the reason that we're convinced that the union is currently complying with the law, even though it hasn't kept the records that it was supposed to keep under the previous orders, is that the fund office data makes extremely clear that the union members are no longer sitting on the bench at desperate rates. Basically, what was going on at the beginning of this case, and for many years after, is that the union was failing to refer people on an equal basis, not on a first-in, first-out basis. And essentially, the Black and Hispanic union members were not getting referred to jobs on an equal basis. And now we're convinced that they are, not necessarily just because of the year of referral data, but because the unemployment data shows that unemployment stints are essentially statistically equal as among Black and Hispanic workers and the other workers in the union. And if the union were continuing to refer people or fail to refer them on a discriminatory basis, that would show up in the unemployment data. So yes, it's concerning that the union didn't keep its records as it was supposed to for a long time, but that's not the only question here. The question is whether they're complying with Title VII. And so this is actually also very similar to the analysis that the court did in the Schachman case that we've cited in the Seventh Circuit, because the court acknowledged, and the parties acknowledged, that the defendant hadn't necessarily been up to speed on everything that it was supposed to be doing to set up the new system to ensure the lack of violations of the law, but there just aren't any legal violations. And we can see that from the fund office data. Is it possible for you to give the kind of data the court is asking for? I mean, about what is happening now in terms of employers, what you have done or what the union has done to try to get employers to respond, but is there anything that really is keeping you from giving the court the kind of data it feels it's necessary to make so dramatic a change? Because this isn't only a change that says we alter the law, but in three years it disappears under what you're asking. It's not clear that it's possible, Your Honor, because essentially the special master who's been overseeing this case has been in charge of telling the union which fields to use in their record-keeping software, how they're supposed to do this, and each time they do it, he finds it unsatisfactory. So I understand that this is very frustrating, and it has been a very frustrating experience, but it's not at all clear what the union would have to do to keep the kinds of data that the special master would find sufficient. I do want to note that the new consent decree has a provision in which if there are any significant concerns that arise during the three-year period, it can be extended. So it's not just a three years and it automatically ends no matter what happens if there is backsliding. That changes the burden by saying come in and show, you know. Yes, Your Honor, and we think that's appropriate given that it's been at least 20, perhaps 30 years since there's been any evidence that the union has been violating Title VII, which is really what we're here to do. And for the EEOC, we'd really like to spend our resources dealing with new charges of discrimination and cases where there's evidence that discrimination is occurring now, and the burden of administering this case that's currently going on is preventing us from being able to do that in New York. So that's why we're here. Can I ask, we jumped sort of seamlessly from jurisdiction to merit, so if I could have you just go back to appellate jurisdiction again. I'm not sure I totally tracked your distinctions from Grant. Certainly, Your Honor. So one really important distinction is that there was no 60 v. 5 issue in Grant. There was no request to set aside previous orders based on changed circumstances. The parties didn't attempt to show changed circumstances. And so to that aspect of the case, it's entirely different. As to the entry of the new consent decree, the main difference is that in Grant, the court said, especially because this was ancillary and conditional relief, it was essentially asking to resolve part of some contempt proceedings that had arisen in Grant, and no matter what happened on the interlocutory appeal, most of the orders would have stayed in place below. And so it was a very different situation. I mean, is it a contention that it wasn't, in Grant, it wasn't modifying a preliminary injunction? It, they did say that it was modifying an injunction in Grant, but it was only as to one part of the, sorry, I'm just making sure I haven't exceeded my time. Is that okay if I? Yes. There was essentially, there were many orders in Grant as there were here. There was contempt proceedings over one issue. There was an intervention, so one of the main issues that was still remaining was back pay. Yeah, I mean, there were, there were multiple instances of contempt. Yes. And then you got new court-ordered requirements on top, including a fine, but also it amended the affirmative action plan and mandated more record-keeping, which sounds a lot like this. And it revised the hiring hall and job rotation systems. Yes, Your Honor, there was significant relief, but one of the key things in Grant was that it included a provision by which the unions could later petition to have the rest of the orders lifted if they met certain requirements. Here, we're saying that they have met the requirements, so it's a very different situation. But I think one other really important distinction, and this is the distinction that the court, that this court made in Citigroup, is that in Grant there was every indication that at some point soon the court would reconsider the settlement agreement and the new requirements once the contempt, once the back pay had been adjudicated below. In this case, that's very much not the case. The court has said, we've made progress, but the data doesn't exist, and until the union has eliminated... The district court say the data doesn't exist or haven't been given the data? The court said the data doesn't exist, and I think the court is just referring to the referral hall data, but what it said in the beginning of the decision is the court is now convinced that the data it sought does not exist. Because it hasn't... Right, you haven't met your record-keeping requirements, not that you can't meet your record-keeping requirements. It's true that the court didn't say it is impossible that the union will ever be able to meet its requirements, but what the court said was necessary was that the union eradicate all disparities. That's in the opinion multiple times at the end of the opinion, and that's in number 503 in the record, but the court said that the union had to be able to eradicate all disparities in employment in the area, and that's just not possible? The union is capable of... Well, they did use some language which is broader, but I don't think... I have a slightly different question. Is the jurisdictional question, if it is there, constitutional or statutory? That is, whatever it is, could there be jurisdiction even if there isn't? Because that depends on whether we necessarily have to decide the jurisdictional issue or can go on to the merits assuming jurisdiction in the appropriate case. So, which is it? It's statutory, Your Honor. This is a question of whether we've met the requirements of 1291 and 1292, and I think the aspect of the case that has to do with setting aside the prior orders is a 1291 issue. So really, the interlocutory assessment and the grant issue has to do with 1292, which is the proposed entry of the new consent decree. So it would be possible for the court to determine that the parties showed significantly changed circumstances, but still not agree that there's jurisdiction to decide. Does the district court... I know we talked about... I said, did you raise it, and you said it wasn't captioned that way, but pointed to where... Does the district court take on that argument and analyze whether or not changed circumstances have been shown? No, Your Honor. The district court didn't address that at all. I think the district court's analysis suggests the court believed that circumstances were not sufficiently changed, although it did say, we recognize the great strides that the parties have made, the fact that the unions used to be essentially all white and have now become integrated, that the apprenticeship program... I mean, if this were a clear 60b-5, and the arguments were litigated, and the district court made a conclusion that changed circumstances have not been shown, what would be our standard of review? It would still be abuse of discretion. It would be abuse of discretion, but with respect to the question of whether there were sufficiently changed circumstances. That's right. That's right, Your Honor. So how do we do that if the district court didn't do that? I think that one of the aspects of the abuse of discretion is that the district court failed at all to consider the changed circumstances arguments that the parties made under 60b-5, and Horn, and Weather, and just applied the wrong legal standard. So the court is capable in this record, just as the district court was, of looking at the evidence, looking at the statistical evidence that we presented, looking at the anecdotal evidence that we presented extensively. 60b-5. Just remind me that there's a timing issue with 60b-5. I believe that we have to appeal the 60b-5 decision within the period that's allowable. We can't avoid the initial order. I think that's the timing issues that some cases have said you can't essentially have a first judgment from the court and then cure untimeliness by asking them to set it aside. But if you look at the Horn case and the Schachmann case, it's clear that those were 60b-5 motions made many, many years after the original determinations from the subsequent orders, and the court was able to consider it anyway. So it just has to be timely as to the of the motion itself. There are no further questions? All right. Thank you very much. Thank you, Your Honor. We'll take the case under advisement, and we'll call our